UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER MILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV01966 AGF |
| | ) |
| BELLEFONTAINE HABILITATION CENTER, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion to dismiss the case. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). Plaintiff, an African-American woman, filed this action pro se under Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e-2 (2000). She claims that on one occasion, while working for her employer, Defendant Bellefontaine Habilitation Center ("Bellefontaine"), a Caucasian co-worker used a racial slur directed at Plaintiff and that, to Plaintiff's knowledge, Defendant took no action after Plaintiff reported the incident to her supervisors. Plaintiff asserts that she was humiliated by the remark, and she seeks damages for emotional distress, as well as punitive damages.

Defendant moves to dismiss on two grounds: (1) that Plaintiff fails as a matter of law to state a claim upon which relief can be granted; and (2) that Bellefontaine is not a suable entity or an employer subject to suit under Title VII. Plaintiff did not file a response to Defendant's motion.

Defendant asserts that Bellefontaine is a mental health facility administered by the Division of Mental Retardation and Developmental Disabilities which, in turn, is part of the Department of Mental Health, a department of the State of Missouri. See § 630.003.5, Mo. Rev. Stat. Plaintiff has not suggested that this assertion is incorrect, and other cases in which the actions of employees of Bellefontaine have been at issue support Defendant's assertion. See, e.g., Nicks v. Missouri, 67 F.3d 699, 701 (8th Cir. 1995) (State of Missouri and Bellefontaine named in discrimination suit under 42 U.S.C. § 1983 by psychologist working at Bellefontaine)[1]; Lewis v. Bellefontaine Habilitation Ctr., 122 S.W.3d 105, 106 (Mo. Ct. App. 2003) (Bellefontaine identified as a facility operated by the Missouri Department of Mental Health).

Although, in dealing with a pro se plaintiff, the Court would normally direct the defendant to identify the proper party and permit the plaintiff to amend her complaint to name the proper party, an amendment in this instance would be futile because the allegations asserted by Plaintiff simply are not sufficient to state a claim for harassment under Title VII.

In considering a motion to dismiss for failure to state a claim, "a complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." Iowa Network Servs., Inc. v. Qwest Corp., 363 F.3d 683, 694 (8th Cir.

---

[1] Although Bellefontaine was named as a party in Nicks, Defendant asserts that the status of Bellefontaine as a separate suable entity or Title VII employer was not addressed in the opinion; the State and Bellefontaine did not appeal the district court's opinion.

2004). All that is required of a complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), the Supreme Court specifically held that complaints in employment discrimination actions are not subject to heightened pleading requirements and that "[g]iven the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 514; see also, Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993) (citation omited). Furthermore, a pro se complaint is entitled to liberal construction. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

Plaintiff's account of the incident underlying this lawsuit, which was filed on October 25, 2005, is that on December 28, 2004, when she went to retrieve a vehicle from the garage in performance of her duties, a Caucasian named Sally who worked in the maintenance department was in the garage and called Plaintiff a "nigger." Plaintiff alleges that Sally was talking to four Caucasian males, and Plaintiff heard one of them say, "Sally watch your mouth. You can not say that on the job." Sally turned and looked at Plaintiff and said, "I say whatever I want to say . . . like I said fuck that nigger." Plaintiff alleges that she was devastated, hurt, confused, and afraid, as she was the only person of her race present at the time. As noted above, Plaintiff alleges that to her knowledge no action was taken by Defendant after she reported the incident in writing to "supervisors and personnel." Plaintiff also alleges in her complaint that "the acts" may still be going on.

3

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Harassment of an employee based on an enumerated factor violates Title VII when the harassment creates a work environment that is "permeated with discriminatory intimidation, ridicule, and insult'" sufficiently severe or pervasive to alter the conditions of the victim's employment. Elmahdi V. Marriot Hotel Servs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also, Bowen v. Mo. Dep't of Soc. Servs., 311 F.3d 878, 884 (8th Cir. 2002) (noting that a Title VII plaintiff "need only establish discriminatory conduct which is either pervasive or severe").

To prevail on a hostile work environment claim, a plaintiff must establish that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) there exists a causal nexus between the harassment and her protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action. Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000). The final element applies to cases such as the present one alleging non-supervisory harassment. See id. n.5.

By Order dated April 16, 2006, the Court informed Plaintiff that it had concerns over whether the complaint stated a claim, specifically pointing out the fourth element of such a claim. The Court afforded Plaintiff time to show cause why Defendant's motion to dismiss should not be granted. Plaintiff filed memoranda in response, in which she

asserts, "This is not the first type of harassment in which I have encountered from Bellefontaine Habilitation Center." Plaintiff continues as follows:

> Prior to this harassment, I was harassed in 2001 etc. . . . . . . . due to me reporting this harassment; I began getting wrote up by Alicia White and Mrs. Dunn after being demoted from Team 1 by supervisor Jamie Lamatice which caused me to be diagnosed with anxiety disorder . . . . Bellefontaine Habilitation Center knew of a prior harassment/assault of sexual harassment as well as the formal harassment of discrimination.

Plaintiff also mentions that she has been terminated by Bellefontaine after six and one-half years of employment. Defendants have not responded to Plaintiff's new pleadings.

As the Court set out in its Show Cause Order, to determine whether the alleged harassment affected a term, condition, or privilege of employment, the Court considers all the circumstances, including the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior unreasonably interferes with the plaintiff's work performance. Singeltary v. Mo. Dep't of Corr., 423 F.3d 886, 892-93 (8th Cir. 2005). "For harassment to affect a condition of employment the conduct must be severe as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Id. (citation omitted). Case law recognizes that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)); Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir. 1999).[2]

---

[2] Although Plaintiff only seeks relief under Title VII, the Court notes that claims of employment discrimination based on race brought under 42 U.S.C. §§ 1983 and 1981 are analyzed under the same standards developed in Title VII litigation. See Wright v.

At issue in Plaintiff's complaint is a single, isolated incident. The comments were made by a co-worker, and not a supervisor, and that co-worker was admonished by another co-worker at the time. While the comments may have been directed at Plaintiff, they were not physically threatening. The Court concludes that the comments made by Plaintiff's co-worker, while abhorrent, simply do not meet the standard of conduct sufficiently severe or pervasive to alter the terms, conditions, or privileges of Plaintiff's employment under controlling Eighth Circuit case law. See, e.g., Al-Zubaidy v. Tek Indus., Inc., 406 F.3d 1030, 1039 (8th Cir. 2005) (isolated, and often offhand offensive comments made by supervisor over ten month period not sufficiently severe or pervasive); Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005) (in age discrimination case, supervisor's regular references to "old ladies," refusal to permit plaintiff to participate in training session because it was "too hard to train old ladies," and comment that plaintiff "didn't have the right parts" to fill in shifts, coupled with co-worker's comment that women were lazy and not needed at the jail, not sufficient to constitute actionable harassment); LeGrand v. Area Resources for Community & Human Servs., 394 F.3d 1098, 1102 (8th Cir. 2005) (unwelcome sexual advances on three separate occasions not sufficiently severe or pervasive); see also, Faragher, 524 U.S. at 787 ("mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not sufficiently alter the terms and conditions of employment to violate Title VII") (citation omitted).

---

Rolette County, 417 F.3d 879, 884 (8th Cir. 2005), cert. denied, 126 S. Ct. 1338 (2006).

In Jackson v. Flint Inc. North American Corp., 370 F.3d 791 (8th Cir.), rev'd on rehrg., 382 F.3d 869 (2004), the plaintiff alleged that on one occasion, after an altercation with two co-workers, he heard a manager refer to him as "that damn nigger." Id. at 793. On another occasion, as he was leaving the office of the plant manager, he heard the manager use the term "black" or "damn black" in an unspecified context. Id. In addition, there were four instances in which co-workers made racially offensive remarks, including use of the term "nigger-rigging"; a reference to music plaintiff was listening to as "nigger shit"; and two instances in which co-workers called plaintiff a "nigger" or "fucking nigger." Id. The Eighth Circuit panel, in its initial decision, found the above conduct was not sufficient to constitute actionable harassment.

On rehearing and reexamination of the record, the panel pointed to plaintiff's deposition testimony that plaintiff's name was written in a shower at his workplace, with an arrow connecting his name to a burning cross and a KKK sign – conduct the Court found would objectively suggest the threat of serious bodily harm." Jackson, 382 F.3d at 870. The panel reversed its prior decision, finding that this threatening conduct, when coupled with the other instances of racial comments, was sufficient to state a claim of actionable conduct. Id. Even here, however, the Eighth Circuit found the matter "not altogether free from doubt," and characterized the case as "on the cusp of submissibility. Id.

The conduct alleged by Plaintiff in her complaint, consisting of a single incident by a co-worker and involving no threats, is nowhere near as egregious as that in Jackson. Under the controlling Eighth Circuit precedent, the Court cannot find that the conduct

7

alleged by Plaintiff meets the standard necessary for an objectively hostile work environment. The Court finds it relevant that the alleged harasser was a co-worker and not a supervisor. See Steck v. Francis, 365 F.Supp.2d 951, 970 (N.D. Iowa 2005) (status of harasser is relevant; a supervisor's use of a racially derogatory term impacts the work environment far more severely than use by a co-worker).

With regard to the statements in Plaintiff's response to the Court's Show Cause Order, the Court concludes that they are too cursory or unrelated to the discriminatory conduct alleged in the complaint to buttress her harassment claim to the point where it states a claim upon which relief can be granted. "[E]ven pro se litigants must set it forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) (per curiam) (granting defendants' motion to dismiss prisoners' claim that a "constant threat of violence" pervaded the prison, where no facts in support of conclusory allegation were presented in the complaint or in response to defendants' motion to dismiss).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED**. [Doc. #13].

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

                                              */s/ Audrey G. Fleissig*
                                              AUDREY G. FLEISSIG
                                              UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of June, 2006.